UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADALBERTO BARBARITO RUIZ-ACOSTA, | No.  1:26-cv-04371-DAD-JDP (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITION FOR WRIT OF *HABEAS CORPUS* AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT |
| CENTRAL VALLEY ANNEX, | |
| Respondent. | (Doc. Nos. 1, 2) |

On June 8, 2026, petitioner, proceeding *pro se*, filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging his detention by Immigration and Customs Enforcement ("ICE") officials.  (Doc. No. 1.)  On June 15, 2026, petitioner filed a motion for temporary restraining order seeking his immediate release from custody.  (Doc. No. 5.)  On June 16, 2026, the court set a briefing schedule on the pending motion and directed respondent to indicate in its opposition whether this case is distinguishable from the circumstances addressed in several of the court's cited prior orders.  (Doc. No. 5.)  In that same order, the court directed that if respondent opposed a court ruling on the underlying petition based on the current briefing before it, respondent was to so indicate in the opposition and provide substantive reasons in support of that position.  (*Id.*)

/////

1

On June 17, 2026, respondent filed combined opposition to the pending motion for temporary restraining order and the petition itself.  (Doc. No. 7.)  In that opposition, respondent argues that petitioner's detention is lawful pursuant to 8 U.S.C. § 1231 because the government intends to remove petitioner, a Cuban national, to Mexico and petitioner has refused to cooperate with his removal to that country.  (Doc. No. 7 at 3.)  Respondent further argues that because petitioner has refused to cooperate with his removal to Mexico and has not claimed a fear of removal to that country, petitioner's continued detention is authorized pursuant to 8 U.S.C. § 1231(a)(1)(C).  (*Id.*) (citing *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)).  Finally, respondent does not state any opposition to the court ruling on the petition based upon the briefing currently before it and the court will therefore do so.

From the parties' briefing and supporting documentation, the court finds the following facts.  Petitioner is a citizen and national of Cuba who entered the United States on or about November 21, 2008.  (Doc. No. 7-2 at 2.)  On June 23, 2014, petitioner was ordered removed to Cuba.  (Doc. No. 7-1 at 1–2.)  On November 2, 2025, petitioner was encountered by immigration officials at the Duval Country Pre-Trial Detention Facility after he was arrested by local law enforcement for driving with a suspended license and operating a vehicle without a registration tag assignment.  (Doc. No. 7-2 at 2.)  Petitioner alleges that he was ultimately taken back into immigration custody on or about November 21, 2025.  (Doc. No. 1 at ¶ 11.)  On or about May 29, 2026, ICE issued a notice of removal addressed to petitioner and signed by a deportation officer indicating that the government intends to remove petitioner to Mexico.  (Doc. No. 7-5 at 1.)  The signature line designated for petitioner's signature on the notice reads "REFUSED TO SIGN." (*Id.*)[1]

Once a final order of removal has been entered, immigration detainees are subject to a 90-day mandatory detention period.  *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001).  "In *Zadvydas,* the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be

---

[1]  In support of its opposition respondent has also offered two copies of a separate notice of removal dated December 2, 2025, which also indicate that ICE intends to remove petitioner to Mexico.  (Doc. Nos. 7-4 at 1; 7-5 at 2.)  However, no ICE official signed that notice.

detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 298–99 (2018) (internal citations omitted). "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

"Numerous courts have held, however, that the burden-shifting scheme of *Zadvydas* is only applicable to those noncitizens who had been detained and never released following a final order of removal." *Martinez v. Bondi*, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (citing *Zadvydas*, 533 at 701). Where . . . petitioner was issued a final order of removal, detained, and subsequently released and then redetained, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed' pursuant to 8 C.F.R. § 241.13." *Id.* (citation omitted).

Here, it is unclear whether petitioner was previously detained after he was ordered removed in 2014 but before ICE took custody over him in November 2025. The court assumes, without deciding, that petitioner was not previously detained by ICE after his removal order was finalized and will apply the *Zadvydas* burden-shifting framework. Even under this more demanding standard, however, the court concludes that petitioner is still entitled to the requested relief.

As to petitioner's initial burden, the "'good reason to believe' standard is not a very high bar as '[a] petitioner need not establish that there exists no possibility of removal.'" *Sahin v. Casey*, No. 3:26-cv-01078-JES-BJW, 2026 WL 800558, at *2 (S.D. Cal. Mar. 23, 2026) (quoting *Freeman v. Watkins*, No. 09-cv-00160, 2009 WL 10714999, at *3 (S.D. Tex. Dec. 22, 2009)). In the pending petition, petitioner argues that his detention has become impermissibly prolonged because he has been detained for longer than six months and the government has informed him that it cannot secure travel documents to Cuba or any other country to effectuate petitioner's removal. (Doc. No. 1 at ¶ 13.) Petitioner has therefore satisfied his burden of establishing that there is good reason to believe that there is no significant likelihood of removal in the foreseeable

future and that his detention, which as of the date of his filing of the petition exceeded six months, has become impermissibly prolonged. *Kozlova v. Warden of the Cal. City Det. Ctr.*, No. 1:26-cv-00499-DJC-AC, 2026 WL 1785250, at *4 (E.D. Cal. June 22, 2026) ("The record of her detention, which has now reached ten months, ICE's failure to obtain travel documents during this time, and the absence of any indication that Russia or another country has agreed or will agree to accept petitioner are sufficient to meet petitioner's initial burden under Zadvydas."). Thus, the burden shifts to respondent to rebut petitioner's showing.

In opposition, respondent has simply argued that petitioner has not met his burden because he has failed to express any fear of being removed to Mexico and has repeatedly refused to cooperate in the government's efforts to effectuate his third country removal despite being notified of the intent to remove him to that country. (Doc. No. 7 at 3–4.) Respondent further argues that petitioner's removal to Mexico is reasonably foreseeable and that the United States has a standing agreement with Mexico to accept Cuban nationals. (*Id.* at 2.) Respondent's argument fails to rebut petitioner's showing in this regard. As another court recently held under similar circumstances:

> In response, the government does not argue that Petitioner's removal to Cuba is likely. *See generally* Dkt. 8. Instead, they submit that "ICE believes that Mexico will accept Petitioner." *Id.* at 10 (citing Dkt. 9 ¶ 19). But Respondents—who have the burden here—provide no evidence to support this assertion. Respondents do not explain the process required for third-country removals to Mexico, for example, or explain what steps they have taken with the Mexican government to arrange for Petitioner's arrival.
>
> Respondents note that they served Petitioner with two notices of removal to Mexico which he refused to sign. Dkt. 9 ¶¶ 17–18. But they ignore Petitioner's contention—supported by an ICE officer's declaration in another habeas case—that the Mexican government only accepts individuals who *consent* to removal there. Dkt. 5 at 7–8 (citing Dkt. 5-1 ¶¶ 11–12) ("ICE drove Petitioner to the Mexican border to effectuate his third country resettlement, but Petitioner refused to willingly go to Mexico. . . . The Mexican government was ready to accept Petitioner only if he would willingly go to Mexico . . . . As removal to Mexico was unsuccessful, ICE no longer intends to seek to remove Petitioner to Mexico."). Given that Petitioner "refuses to be removed to Mexico and has declined to sign the Notice of Removal to Mexico," *id.* at 5, Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite.

> Because there is not a likelihood that either Cuba or Mexico will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus.

*Rodriguez-Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026).

This court finds the reasoning in *Rodriguez-Fernandez* to be instructive. Indeed, here, as in that case, respondent has failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that Mexico is likely to accept this petitioner specifically. To be sure, respondent has argued that petitioner's removal is likely to occur because Mexico and the United States have a standing agreement that Mexico will accept Cuban nationals which has resulted in thousands of successful removals of Cubans throughout 2025 and 2026. (Doc. No. 7 at 2.) However, "standing alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [petitioner] any time soon." *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025). Moreover, as also explained by the district court in *Rodriguez-Fernandez*, that standing agreement between the United States and Mexico appears to be contingent upon the non-citizens consent to be removed to Mexico, which does not appear to be the case here in light of petitioner's refusal to sign the notice of intent. Respondent fails to explain why Mexico would be likely to accept petitioner under these circumstances. Therefore, the court concludes that respondent has failed rebut petitioner's showing that his removal is not reasonably foreseeable. Accordingly, the court concludes that petitioner is entitled to *habeas* relief.

For the reasons explained above,

    1.    Petitioner's petition for writ of *habeas corpus* (Doc. No. 1) is GRANTED as follows:

/////

a.   Respondent is ORDERED to immediately release petitioner Adalberto Barbarito Ruiz-Acosta, A-File No. 089-931-654, under reasonable terms of supervision pursuant to § 1231(a)(3);

b.   Respondent is ENJOINED and RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without notice and a pre-detention hearing before an immigration judge;

2.   Petitioner's motion for a temporary restraining order (Doc. No. 5) is DENIED as having been rendered moot by this order granting his *habeas* petition on the merits;

3.   The Clerk of the Court is directed to serve the Central Valley Annex Detention Facility with a copy of this order; and

4.   The Clerk of the Court is directed to enter judgment in favor of petitioner and to close this case.

IT IS SO ORDERED.

Dated:   **June 25, 2026**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE